Zolo Agona AZANIA, f/k/a Rufus Lee
Averhart, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 02S00–8808–PC–751.

Supreme Court of Indiana.

June 6, 2000.

Rehearing Denied Aug. 3, 2000.

Kevin L. Likes, Likes and Kraus, Auburn, Indiana, Michelle Fennessy Kraus, Schenkel, Tirpak & Kowalczyk Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Zolo Agona Azania, formerly known as Rufus Lee Averhart, and two co-defendants were convicted of murder[1] and felony murder[2] for killing Gary police officer George Yaros during a robbery of the Gary National Bank on August 11, 1981. The jury recommended a death sentence. Treating the two convictions as a single offense, the trial court sentenced the defendant to death. On direct appeal, this Court affirmed the defendant's sentence. *Averhart v. State,* 470 N.E.2d 666 (Ind.1984). In 1993, on appeal from the denial of post-conviction relief, we reversed based on the ineffective assistance of trial counsel in the penalty phase and the failure of the prosecution to provide gunshot residue test results to the defense. We remanded for either the imposition of sentence for a term of years or a new penalty phase trial and sentencing proceeding. *Averhart v. State,* 614 N.E.2d 924 (Ind.1993).

On remand, a jury again recommended death, and the trial court entered judgment ordering the death sentence. Upon receipt of the defendant's appeal, this Court remanded and directed the trial court to enter an amended sentencing order. Following trial court's entry of the revised order, the defendant submitted his supplemental brief. This appeal now presents the following issues: (1) denial of the defendant's motion to dismiss; (2) admission of character evidence; (3) presentation of false testimony at the guilt phase trial; (4) adequacy of the sentencing order; (5) refusal to admit the State's closing argument as substantive evidence; (6) communications between the bailiff and the jury; and (7) non-disclosure of exculpatory evidence.

## Motion to Dismiss

The defendant contends that the trial court erred in summarily denying his motion to dismiss the death penalty proceeding on grounds of procedural irregularity. The defendant was initially charged by information, but the prosecutor dismissed the information and filed an indictment after the grand jury subsequently returned an indictment including two counts with identical substantive allegations as the information, plus two counts seeking the death penalty. On February 12, 1982, the defendant moved to dismiss the indictment alleging defective grand jury proceedings by reason of certain evidence presented. *Averhart,* 470 N.E.2d at 677. The motion was denied, and the issue was raised and addressed in the defendant's first direct appeal. *Id.* at 677–79. After we remanded the case for a new penalty phase and sentence determination, the defendant filed another motion to dismiss challenging the indictment upon which the first penalty phase and sentencing proceedings had been based. In the present appeal, the defendant challenges the denial of this second motion to dismiss that was filed after the conclusion of the first direct appeal and after his appeal from the denial of post-conviction relief.

In the second motion to dismiss, and now in this appeal, the defendant argues that the grand jury lacked the power to initiate the death penalty proceedings by indictment. He contends that a grand jury may only indict for "an offense" and that the death penalty is not "an offense."

1. IND.CODE § 35–42–1–1(1).

2. IND.CODE § 35–42–1–1(2).

He claims that the indictment was thus a nullity and that his motion to dismiss the indictment should have been granted. The defendant did not challenge the legal authority of the grand jury to commence the death penalty proceedings in his original trial, his first direct appeal, his petition for post-conviction relief, or his appeal from the denial of post-conviction relief.

■ Upon motion of the defendant, a court may dismiss an indictment based upon one of several enumerated grounds or "any other ground that is a basis for dismissal as a matter of law." IND.CODE § 35–34–1–4(a)(11). A motion under subdivision (a)(11) may be made at any time before or during trial, IND.CODE § 35–34–1–4(b)(2). Upon a motion to dismiss, a defendant should raise every ground upon which he intends to challenge an indictment, IND.CODE § 35–34–1–4(c); however, "in the interest of justice and for good cause shown," the court may entertain and dispose of such a motion on the merits, IND.CODE § 35–34–1–4(c). Although this was a second motion to dismiss the indictment, it was filed before the retrial after remand from this Court. Because of the unique procedural posture of this capital sentencing proceeding, we find that the interest of justice and good cause requirements are satisfied and address the defendant's motion on the merits.

The indictment issued by the grand jury was denominated in four counts. Count I charged the offense of murder. Count II charged the offense of felony murder. Count III sought a death sentence and alleged the aggravating circumstance of intentional killing while committing or attempting to commit robbery. Count IV sought a death sentence and alleged the aggravating circumstance that the victim was a law enforcement officer acting in the course of his duty.

■ To support his argument that his death penalty is based on an invalid indictment, the defendant cites *Owens v. State*, 659 N.E.2d 466 (Ind.1995), in which we observed: "Without deciding the question, we express here our doubt that the State has the authority to seek an indictment for a 'violation' of Indiana Code § 35–50–2–9, our death penalty statute." *Id.* at 472. Our concern in *Owens* arose from statutory language authorizing grand juries to deliberate and to issue an indictment alleging the commission of criminal offenses. In *Owens*, the grand jury was not asked to consider whether to issue an indictment charging a criminal offense. Rather, the prosecutor only presented to the grand jury the issue of whether to seek the death penalty in the pending case. In the present case, however, the grand jury issued an indictment charging two criminal offenses as well as issuing a request for the death penalty. The additional pages identified as counts III and IV of the indictment complied with the established statutory procedure.[3] Although each of the four counts was drafted on preprinted grand jury forms with preliminary language containing the word "indictment," we decline to elevate form over substance. The four counts comprised a single indictment, with counts I and II each charging a criminal offense and with counts III and IV separately presenting grounds for seeking the death penalty.

In addition, as pointed out by the State, the defendant's assertion that statutory language authorizing an indictment for an "offense" precludes a grand jury from seeking the death penalty by indictment would likewise preclude the State from seeking the death penalty by information. Applicable statutory provisions provide: "Any crime may be charged by indictment or information";[4] "The indictment or information shall be in writing and allege the

3. The State is authorized to seek a death sentence "by alleging, on a page separate from the rest of the charging instrument, the existence of at least one of the aggravating

circumstances" listed in the statute. IND.CODE § 35–50–2–9(a).

4. IND.CODE § 35–34–1–1.

commission of an offense ....";[5] and "The indictment or information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."[6] The State was authorized to institute this criminal prosecution by filing an information or indictment. IND.CODE § 35–34–1–1. Our legislature could not have created a capital sentencing procedure and yet prohibited the commencement of such proceedings.

We reject the defendant's claim that the grand jury's commencement of death penalty proceedings in this case was invalid and a nullity.

### Admission of Character Evidence

The defendant contends that a pretrial ruling by the trial court denied him his right to a fair trial. He argues that the ruling restricted him "from presenting his mitigation evidence in front of the jury for fear of the State's rebuttal evidence." Amended Brief of Appellant at 27. Before the penalty phase retrial began, the defendant filed a motion pursuant to Indiana Evidence Rule 404 seeking disclosure of the nature of evidence of crimes, wrongs, or acts that the State planned to present.[7] In its ruling on the motion, the trial court stated: "If the defendant raises character as an issue in his case in chief, the State will be allowed to present relevant character evidence in rebuttal. It is the court's opinion that discussing the defendant's family history and background places the defendant's character in issue." Record at 1047. Following this ruling, the defendant filed a motion in limine seeking to prevent the State from disclosing information regarding the defendant's alleged involvement in the killing of a man named Wick.[8] In making its ruling, the trial court characterized its former ruling as prohibiting the State from presenting such evidence in its case in chief and then explained: "We are not talking about guilt or innocence here. We are talking about the balance between the aggravating and the mitigating circumstances, and I think that that is an appropriate line of inquiry for the State to do." Record at 2685.

During the penalty phase retrial, the State did not attempt to present character evidence in its case in chief or on rebuttal, nor did the defendant, who only presented mitigation witnesses who testified regarding the firearms used in the robbery and the injuries suffered by Officer Yaros, bolstering the defendant's argument that any one of the defendant's accomplices might have fired the fatal shot.

After the jury was charged and began deliberations, the trial court permitted the defendant to make a record showing the mitigation evidence he would have presented had it not been for the court's ruling that such evidence would open the door for the prosecutor to discuss the defendant's prior criminal history. Summarizing the prior proceedings, the defense stated:

> And then ... my understanding is ... that it was the court's opinion that any evidence presented on the defendant's family background, history or childhood would be considered character evidence,

---

5. IND.CODE § 35–34–1–2.

6. IND.CODE § 35–34–1–2(d).

7. The rule provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *provided that upon request by the accused, the prosecution in a criminal case*

> *shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial.*
> Ind. Evid. R. 404(b) (emphasis added).

8. Although neither party refers us to any documentation of this prior conviction, a review of the argument before the trial court on this issue suggests that the defendant was convicted of voluntary manslaughter and served a portion of a sentence before the conviction was overturned on post-conviction review. At the time of the sentencing phase we consider here, the State had not pursued the voluntary manslaughter case any further.

and if character evidence were introduced in the defense case in chief, the State would be allowed to present appropriate rebuttal character evidence, which included—and this is not in the written record, but which included certainly this Wick homicide that we've referred to throughout the months.

Record at 3689. The trial court acknowledged this as a fair statement and added:

But it was basically that you opened the door—by putting character evidence in, thus allowing them—stripped of all the fancy dancing we're doing here. It was my opinion by putting that character evidence—that kind of evidence that you just characterized in the record, you were putting character at issue, thus allowing the State to present rebuttal character evidence ... [w]hich would have, I assume—with proper foundation and all that, would have allowed this Wick situation to come in.

Record at 3689. The defendant then presented for preservation in the record the testimony and a twenty-nine-page report of a sociologist and the deposition of a neuro-psychologist regarding their investigation of the defendant's family and social history and psychological test results.

■ The defendant now argues that the evidence he presented in his offer of proof was evidence of history and not of character. This assertion is not relevant, however, because the trial court's preliminary, pre-trial ruling is not a proper issue for appellate review. Significantly, the defense voluntarily elected against presenting this evidence to the penalty phase jury.[9] The trial court did not exclude it and, based on its pre-trial rulings, would likely have admitted it. We realize that the defendant contends that the trial court erred in its pretrial ruling announcing that the State would be permitted to rebut such evidence with evidence of the defendant's other crimes, wrongs, or acts. The State

never offered such evidence, presumably because of the defendant's success in its motion in limine, and the trial court did not make a trial ruling thereon. If the defendant had presented the evidence in question, the State would have then had to choose whether to offer the Wick evidence. If it did, the trial court would then have had to decide whether to admit it. From such a ruling, the defendant could have appealed, and, if successful, a new penalty phase trial would have resulted.

■ In order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine. *Miller v. State*, 716 N.E.2d 367, 370 (Ind.1999). Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error. Ind. Evid. Rule 103(a). The trial court's ruling on the motion in limine did not prevent the defense from presenting mitigation evidence. The defense was able to choose between the perceived advantages of social/psychological mitigation evidence and the disadvantages of prior behavior evidence. The defense successfully obtained a pretrial ruling preventing the State from presenting evidence it deemed detrimental to the defendant's interests in the penalty phase and then made a strategic decision not to risk admission of such excluded evidence on the State's rebuttal. We find no error presented by these facts.

### False Testimony During the Guilt Phase

The defendant contends that his conviction and sentence must be set aside because the State knowingly used false testimony during the 1982 guilt phase that resulted in the conviction. He claims that a representative of the State provided information to a witness, James McGrew,

9. This evidence was presented again and admitted during the sentencing hearing before the trial judge.

who then provided identification testimony based thereon.

■ This Court has unequivocally condemned prosecutorial use of perjured testimony or testimony known to be false. *Gordy v. State,* 270 Ind. 379, 381, 385 N.E.2d 1145, 1146 (1979). Such conduct "invokes the highest level of appellate scrutiny" and requires that any resulting conviction be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.*

During the 1996 penalty phase retrial, McGrew testified that before he took the stand in the 1982 guilt phase trial, he informed a police officer that he could not identify the defendant and that someone then advised him where the defendant would be sitting in the courtroom. In the penalty phase retrial, McGrew did not present any identification testimony, and his identification of the defendant was not an issue.

■ Because consideration of many factors may be appropriate to allow for a full and fair review of this claim, we find that the record does not enable us to evaluate fairly this issue in these appellate proceedings. The record of the 1982 trial is not part of the record on this appeal, and there has been no post-conviction fact-finding relating to potentially relevant matters, at a minimum including the nature and extent of the information McGrew had provided to the State, the exchange that occurred between McGrew and representatives of the State immediately preceding his 1982 testimony, McGrew's testimony during the 1982 trial, the totality of the evidence presented in the 1982 trial, and the extent to which this claim was available to the defendant during his prior post-conviction proceeding.

In its response to this issue, the State asserts that "[e]ven if this claim might be appropriately brought via a request to file a successive post-conviction petition under Ind. Post–Conviction Rule 1(12), it is not properly before this Court in this proceeding." Brief of Appellee at 10. We agree.

## Adequacy of the Sentencing Order

The defendant contends that the sentencing order is defective in two respects: (1) failing to consider, identify, articulate, and discuss mitigating circumstances; and (2) failing to set forth the trial judge's personal conclusion that the death sentence is appropriate. The State, in its Appellee's Brief in response to the defendant's appeal following the penalty phase retrial and sentencing, acknowledged shortcomings in the trial court's sentencing order and suggested that "a remand may be required in this instance." Brief of Appellee at 12. We remanded it to the trial court with directions to enter an amended sentencing order and directed that the parties may thereafter file supplemental briefs. This case is now before us on the resulting revised sentencing order.

■ The defendant argues that the sentencing statement "fail[s] to identify and articulate any specific mitigating circumstances" and that this indicates a failure to consider mitigation. Supplemental Brief of Appellant at 3. However, the defendant does not identify any claimed mitigating evidence that was presented but not considered by the trial court. The revised sentencing order clearly acknowledges that the defendant "presented evidence proving the existence" of the following mitigating circumstances: (1) the defendant was bright and his death would be a loss; (2) the defendant's neuro-psychology tests indicated a "neurocognitive dysfunction which caused imperfect or sometimes maladaptive judgment and reasoning which increased with stress"; (3) the defendant's difficult childhood; and (4) a psycho-social assessment of the defendant indicated "psychological and physical abuse as a child resulting in deficits in self-control, impulse control, insight, and development of social judgment." Second Supplemental Record at 2. The sentencing order expressly states that the trial court evaluated and balanced the aggravating and mitigat-

ing circumstances, that it found that the aggravating circumstances outweighed the mitigating circumstances, and that it had considered the jury recommendation favoring the death penalty.

The defendant cites *Harrison v. State*, in which we discussed sentencing orders in capital cases and emphasized that the trial court's statement of reasons for entering a death sentence is important "to insure the trial court considered only proper matters when imposing sentence, thus safeguarding against the imposition of sentences which are arbitrary or capricious, and to enable the appellate court to determine the reasonableness of the sentence imposed." 644 N.E.2d 1243, 1262 (Ind.1995).

We are satisfied that in determining the sentence the trial court considered only proper matters and was not arbitrary or capricious. Although unusually succinct, the sentencing order identifies the mitigating factors found and the witnesses who provided the supporting evidence. Further, the order reflects that the trial court, in reaching its conclusion, evaluated and weighed the mitigators and aggravators and also considered the recommendation from the jury. We decline the defendant's claim that the trial court's sentencing statement is defective for failing to consider, identify, articulate, and discuss mitigating circumstances.

■ The defendant also argues that the trial court failed to set forth "a personal conclusion" as to the appropriateness of the sentence. We have emphasized the desirability of a trial court's capital sentencing order including the trial court's personal conclusion that the sentence is "the appropriate punishment for this offender and this crime." *Harrison*, 644 N.E.2d at 1263. This criterion "make[s] clear that the sentencing court has a separate and independent role in assessing and weighing the aggravating and mitigating circumstances and in making the final determination whether to impose the death penalty." *Williams v. State*, 669 N.E.2d 1372, 1389 (Ind.1996). The revised sen-

tencing statement does not separately articulate the trial court's personal conclusion as recommended in *Harrison*. When a similar claim was presented in *Allen v. State*, 686 N.E.2d 760 (Ind.1997), we observed that the essence of this issue is "whether the judge reached an independent conclusion that a sentence of death is warranted," *id.* at 788. Reviewing the sentencing order in its entirety, we found that "[t]he court's balancing of the evidence emphatically displays its discrete, individualized sentencing." *Id.* at 790.

■ In the present case, the trial court's revised sentencing order reflects that the judge found the two aggravating circumstances proven beyond a reasonable doubt and that the defendant proved multiple mitigating circumstances, which the order describes in some detail. The trial judge expressly noted that he considered the jury's recommendation, but the revised order clearly reflects that the trial judge also personally evaluated and balanced the aggravating and mitigating circumstances and concluded that the former outweighed the latter. In both his initial and revised sentencing orders, the trial judge ordered the death sentence.

We find that the revised sentencing decision reflects the trial court's "separate and independent role in assessing and weighing the aggravating and mitigating circumstances and in making the final determination." *Williams*, 669 N.E.2d at 1389. As in *Allen*, we are satisfied that the trial judge reached an independent conclusion that a sentence of death is warranted and that the court's balancing of the evidence demonstrates its discrete, individualized sentencing. *Allen*, 686 N.E.2d at 790.

### Exclusion of the State's Prior Closing Arguments

■ The defendant contends that the trial court erroneously prevented him from presenting the State's closing arguments from the 1982 trial during his case in chief in the 1996 penalty phase retrial. The

trial court refused the defendant's offer to present, as a party admission, the prosecuting attorney's closing statement from the original trial.

During the retrial, both the defendant and the State presented evidence regarding the defendant's commission of the murder that was not presented in the 1982 trial. In the penalty phase retrial, the defendant requested that the court admit the State's prior closing statement and argued that, at the original 1982 trial, the State's theory was "that the execution style shot by [the defendant] was to the upper right chest clavicle area. It was not the abdominal wound ... [F]rom the evidence they've presented here, ... they're [going to] argue to the jury that the close range shot is now the abdominal wound." Record at 3543. The trial court refused to admit the prior closing arguments as evidence on grounds of relevancy.

■ We review a trial court's evidentiary decision for an abuse of discretion and will reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind.1997). The defendant was not seeking to offer factual evidence from the 1982 trial but rather the prosecutor's final argument regarding the evidence. Even if the 1982 closing statements may be relevant to the issue of the credibility of the State's 1996 argument, they were not relevant to the 1996 evidence in the penalty phase retrial. The mere fact that a party earlier argued a different theory based on different evidence does not render the argument relevant to the issues presented in the later proceeding. The trial court did not err in refusing to admit the prosecutor's prior closing arguments.

### Communications Between the Bailiff and the Jury

■ The defendant next claims that the trial court erred in denying his motion to correct error based on the bailiff's alleg-

edly improper communications with the jury outside the defendant's presence.

Hearing a knock on the inside of the door to the jury room, the bailiff entered and learned that the jury had reached a verdict. He ascertained that the verdict forms had been signed, but noticed several jurors crying. The bailiff then telephoned the judge who instructed the bailiff to re-enter the jury room, determine whether the verdict was unanimous, and inform the jurors that they might be individually polled concerning the verdict. Because this occurred in his absence, the defendant contends that he was deprived of his right to be present.

■ To ensure the right of criminal defendants generally to be present at all stages of a criminal proceeding, Indiana courts have often stated that when communication between a bailiff and a jury occurs outside the defendant's presence, there is a presumption of harm to the defendant. *Wilson v. State*, 511 N.E.2d 1014, 1018 (Ind.1987); *Driver v. State*, 594 N.E.2d 488, 493 (Ind.Ct.App.1992); *Harrison v. State*, 575 N.E.2d 642, 649 (Ind.Ct.App. 1991). Reversal is not required, however, "unless harm or prejudice result[s] from the communication." *Lott v. State*, 690 N.E.2d 204, 210 (Ind.1997). *See also Wilson*, 511 N.E.2d at 1018.

Here the communication occurred after the jury had completed deliberations and after the verdict forms were signed. There is no indication that the communication between the bailiff and the jury resulted in any harm or prejudice to the defendant. The trial court did not err in denying the motion to correct error.

### Non-disclosure of Exculpatory Evidence

The defendant contends that the death sentence should be reversed because the State failed to disclose exculpatory evidence to the defendant as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendant's argument emphasizes his claim of

continuous *Brady* violations, but he only identifies one incident that has not already been resolved or remedied by this Court by our 1993 remand [10] or thereafter by the disclosures ordered by the post-conviction court.

■ The defendant claims that the State failed to produce information regarding certain firearm tests, referred to as "test fires." At the 1996 sentencing hearing, an officer assigned to the Lake County Police Crime Lab testified regarding a comparison examination he conducted and stated that he had retrieved the original test fires generated as a result of the testing and examination conducted in 1981. In the intervening years, the State had searched for, but had not found, the test fires. The defense asserts that, because the State failed to locate and produce the original test fires, his penalty phase retrial counsel "did not believe that a comparison was possible" and that, "had defense counsel been aware of the ability to do comparisons, [his ballistic expert] could have provided a complete examination of the evidence." Amended Brief of Appellant at 38.

■ The defendant does not, however, contend or demonstrate that his expert's examination would have resulted in favorable evidence. Reversal on grounds of a *Brady* violation requires the defendant to establish: (1) that the prosecutor suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the suppressed evidence was material. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. We need not address whether the State's failure to locate and provide the original test fires amounts to suppression because the defendant has not shown that the evidence was material and favorable to the defense. In addition, the materiality element under *Brady* requires the defendant to establish a reasonable probability that the result of the proceeding would be different if the State had disclosed this evidence. *Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 1565–66, 131 L.Ed.2d 490, 505–06 (1995).

The defendant is not entitled to reversal on his claim that the State failed to disclose exculpatory evidence.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN and RUCKER, JJ., concur. BOEHM, J., dissents with separate opinion.

BOEHM, Justice, dissenting.

I disagree with the majority's resolution of the "Admission of Character Evidence" issue. The majority holds that the issue was not preserved because Azania did not object at the proper time at trial. I believe that Azania's raising of the issue in a pretrial motion, renewing the issue again on the first day of trial, and making of an offer of proof at trial is sufficient to preserve the issue for our review. I would

10. The defendant argues that several omissions in the State's disclosures require reversal. We previously addressed many of these concerns in our consideration of the defendant's appeal from the denial of his petition for post-conviction relief. In the course of that appeal, we suspended consideration of the appeal and ordered that the post-conviction court conduct an *in camera* review of the police and prosecution files. Upon review of the resulting findings of the post-conviction court, we found that the defendant was not entitled to a new guilt phase trial because the evidence would not have affected the outcome in light of the State's use of a vicarious liability theory. *Averhart*, 614 N.E.2d at 928. We did, however, order a new penalty phase trial and sentencing proceeding, finding that, while the jury need not have determined which defendant fired the fatal shot in order to find guilt, the penalty phase jury needed to determine whether the defendant was the person who fired the fatal shot. *Id.* at 931. Thus, we found that the failure to release to the defendant the inconclusive gunshot residue tests undermined confidence in the jury's recommendation. *Id.* Our remand for treatment of those claims remedied any harm to the defendant by the suppression of that evidence, and further review of those claims is barred by *res judicata*.

reverse the judgment of the trial court and order a new penalty phase.

On July 21, 1995, Azania filed a Motion for Disclosure of Rule 404 Evidence. After a hearing the trial court entered the following order on December 18: "If the defendant raises character as an issue in his case in chief, the State will be allowed to present relevant character evidence in rebuttal. It is the Court's opinion that discussing the defendant's family history and background places the defendant's character in issue." On February 14, 1996, Azania filed a Motion in Limine requesting an order preventing the State from presenting evidence relating to another homicide that had occurred several years earlier. After a jury had been selected but before the State began its presentation of evidence, the trial court heard argument on the motion. At that hearing Azania described the nature of the mitigating evidence he planned to introduce. The State responded that if Azania chose to offer evidence such as testimony of his disturbed childhood, the State would introduce rebuttal evidence that Azania had killed another man several years before the murder of Officer Yaros.[1] The trial court ruled that the State could not present evidence of a prior killing in its case-in-chief. However, if Azania submitted the planned evidence of his family history and background the prior killing evidence would be "fair game" for rebuttal. Faced with this ruling Azania chose to omit the evidence he had proposed. After the jury began its deliberations the trial court permitted Azania to make a formal offer of proof at which he submitted testimony and a twenty-nine page report about his family history and background and, by agreement with the State, a deposition of his mental health expert.

### I. Preservation of the Error

The majority holds that, because the trial court made only a preliminary ruling on the admissibility of the evidence of a prior homicide, the issue was not preserved for appellate review. It reasons that Azania should have presented his mitigating evidence, allowed the State the opportunity to choose whether to offer the evidence of a prior homicide, and then allowed the trial court to decide whether to admit it. Only from such a ruling could Azania appeal.

The only case cited by the majority for this requirement is *Miller v. State*, 716 N.E.2d 367, 370 (Ind.1999). That case stands for the general principle that a party must do more than challenge a ruling on a motion in limine in order to preserve an issue for appellate review.[2] This Court has given two fundamental reasons for the requirement that a party renew a ruling on a pretrial motion in limine at trial and make an offer of proof of the excluded evidence in order to preserve the error. First, an objection at trial gives the trial court the opportunity to make a final determination of the admissibility of evidence in the context in which it is offered. *See Clausen v. State*, 622 N.E.2d 925, 928 (Ind.1993). Second, the offer of proof establishes a record on which an appellate court can assess the value of the excluded evidence and the prejudice resulting from its exclusion. *See Taylor v. State*, 710 N.E.2d 921, 923 (Ind.1999) (quoting 12 Robert Lowell Miller, Jr., *Indiana Prac-*

---

1. Although Azania pleaded guilty to voluntary manslaughter in that case, the conviction was set aside pursuant to a petition for postconviction relief and the State did not pursue the case any further.

2. In *Miller*, at a pretrial motion in limine hearing the trial court ruled the defendant's proffered evidence was inadmissible. This ruling was erroneous but the error was held to have been waived on appeal because no offer of proof was made at trial. This Court observed, "To raise the question of error, the evidence must be offered at trial to give the trial court the opportunity to rule on its admissibility at that time." *Miller*, 716 N.E.2d at 370 (quoting *Tyra v. State*, 506 N.E.2d 1100, 1103 (Ind.1987)); *see also* Ind. Evidence R. 103(a) (requiring a timely objection and offer of proof at trial in order to preserve error).

*tice* § 103.113, at 55 (2d ed.1995)). In the typical case, these requirements impose a minimal burden on the objecting party. Normally a party who has incurred an adverse ruling on its motion in limine faces no adverse consequences from renewing the issue at trial.[3] This can be done outside the jury's presence to avoid any appearance of an obdurate defense, and at worst, the party will get the same ruling.

Although Azania made an offer of proof at trial after raising the issue both in a pretrial motion and again on the first day of trial, the majority finds any claim of error waived because the objection came too early. I see no reason why Azania should have been required to raise the issue a third time with the trial court. The important goals furthered by requiring an objection at trial and offer of proof were satisfied in this case. The trial court was given an opportunity to reconsider its pretrial ruling on the first day of trial. It knew the nature of both Azania's mitigating evidence and the State's rebuttal evidence at that time. Azania made an offer of proof on which this Court can evaluate the prejudice resulting from the trial court's ruling. Finally, unlike the typical case in which renewing an adverse ruling on a motion in limine at trial poses no adverse consequences, Azania had a great deal to lose by waiting to object until the State offered the evidence of a prior homicide in rebuttal. It is clear that defense counsel viewed this evidence as very damaging to Azania's case.[4] Confronted with the option of either submitting mitigating evidence that would open the door to devastating rebuttal evidence or submitting no childhood or background evidence at all, Azania reasonably chose the latter.

I see nothing to be gained by the majority's requirement that Azania wait to object until after the State sought to admit the prior homicide evidence in rebuttal. The trial court had been apprised both before and at trial of the relevant evidence and arguments on the issue. The possibility that it would have changed its ruling when presented with the issue for a third time seems remote at best, and the purposes of the *Miller* requirements were, in my view, all fully served. In short, I believe Azania's raising of the issue before trial, renewal of the issue at the beginning of trial, and making of an offer of proof is sufficient to preserve the issue for this Court's review.

## II. The Merits of Azania's Claim

Consistent with the United States Supreme Court's holding in *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), Indiana Code § 35–50–2–9(c)(8) allows capitally charged defendants to present evidence in a penalty phase that supports "every conceivable mitigator." *Minnick v. State,* 698 N.E.2d 745, 761 (Ind.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 501, 145 L.Ed.2d 387 (1999). Azania sought to submit evidence regarding his childhood, family background, and mental capabilities. A licensed social worker had prepared a detailed social history that included evidence of Azania's difficult childhood, namely, that he grew up poor in a large family that initially lived in a housing project. At the age of nine Azania witnessed his father die of a heart attack. His family then moved into a new house with insurance proceeds, but his mother soon went to work in Chicago, where she would stay from Monday morning through Friday, leaving Azania and his younger siblings at

---

**3.** In *Vehorn v. State,* 717 N.E.2d 869, 872 (Ind.1999), this Court repeated the general principle of non-preservation of errors raised in a pretrial motion in limine but not renewed at trial. However, we noted that "there are occasional exceptions to this general rule." *Id.* at 872–73. In that case, the exception was the trial court's assurance "even if you don't

object, the Court will find ... that your objections to this type of evidence have been timely made." *Id.* at 873.

**4.** Counsel described the evidence as "[t]he most prejudicial information that this jury" could hear. "If [it] comes in, it's over."

home without adult supervision. When Azania's mother was at home, she sometimes disciplined the children by whipping them with belts and extension cords. Azania also sought to offer evidence from Dr. Michael Gelbort, who conducted a series of tests on Azania and concluded that Azania had problems with concentration, juggling cognitive information, and working at a normal rate of speed. Dr. Gelbort categorized Azania in the mild, moderately impaired range.

Although it is clear that this evidence was admissible pursuant to the statute and *Lockett,* Azania ultimately decided not to offer it solely because of the trial court's ruling that it would open the door to rebuttal evidence of a prior homicide. The State contended at trial that evidence of the prior homicide was proper to "rebut whatever character evidence [Azania] put forth to show that he's such a great guy." [5]

It is well settled that "[t]he State may properly introduce rebuttal evidence tending to disprove mitigating circumstances shown by defendant's evidence." *Stevens v. State,* 691 N.E.2d 412, 435 (Ind.1997) (quoting *Fleenor v. State,* 622 N.E.2d 140, 149 (Ind.1993)). "When the accused offers evidence of her own character, she opens the door to the subject of her character for the trait placed in issue." *Brown v. State,* 577 N.E.2d 221, 232 (Ind.1991). Although the scope of rebuttal evidence lies within the trial court's discretion, *see id.,* it is clear under these authorities that the re-

buttal evidence must pertain to the specific mitigating evidence submitted by the defendant.[6]

Here, Azania sought to submit evidence of a difficult childhood and family background as well as continuing mental impairments. In my view, this is not character evidence. Rather, it is presented as evidence of the sources of a flawed character. Whether that should or should not be given weight is for the jury to consider. The State would have been entitled to present evidence rebutting the proffered evidence. But this does not open the door to evidence dealing with other alleged crimes or bad acts. None of the proffered evidence suggests that Azania was nonviolent, had no criminal history, or was otherwise a "great guy." Accordingly, under these circumstances evidence of a prior homicide is not proper rebuttal.

### III. Prejudice

Not every error in the admission or exclusion of evidence is grounds for reversal. An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor that it did not affect the substantial rights of a party. Ind. Trial Rule 61; *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995). In a death penalty case in which the jury unanimously recommended death, I believe the required standard for prejudice is whether there is a reasonable probability that the excluded mitigating

---

**5.** The State makes no argument on appeal about the merits of the trial court's ruling. It simply asserts that the issue is not preserved without making an alternative argument, as it often does, that even if preserved the issue fails on its merits.

**6.** In *Stevens,* the defendant elicited penalty phase testimony regarding his nonviolent and law-abiding character. 691 N.E.2d at 435. On cross-examination, the State then asked one of Stevens' expert witnesses about Stevens' prior molestation of children, Stevens' alleged involvement in another killing, and the expert's opinion regarding Stevens' future dangerousness. Although this Court found any claim of error waived on appeal because defense counsel did not object to this cross-

examination, we observed that counsel likely did not object because the cross-examination testimony was relevant to countering Stevens' mitigating evidence and that Stevens had "opened the door" to this testimony. *See id.* Similarly, in response to the defendant's mitigating evidence of a general lack of aggressiveness, domination by another person, and borderline retardation in *Brown,* this Court held that it was proper rebuttal for the State to submit a videotape from another trial in which the defendant testified that she had willingly and independently murdered a woman by beating her with a vice grip, pop bottle, candy dish, and crowbar. *See* 577 N.E.2d at 231–32.

evidence would have convinced at least one juror not to recommend death.

·In this case the State alleged two aggravating circumstances: (1) intentionally killing while committing a robbery and (2) killing a law enforcement officer in the course of duty. *See* Ind.Code § 35–50–2–9(b)(1) & (6). The jury was properly instructed that it could recommend death only if it found that the statutory aggravating circumstances outweighed any mitigating circumstances. *See id.* § 35–50–2–9(k). The jury was specifically instructed "to consider the following mitigating circumstances: The defendant was an accomplice in a murder committed by another person and the defendant's participation was relatively minor; or two, any other circumstances appropriate for your consideration."

The evidence presented in the offer of proof is not especially strong in comparison to the available but unpresented evidence in cases in which this Court has granted a new penalty phase based on ineffective assistance of counsel. *See, e.g., Rondon v. State,* 711 N.E.2d 506, 522 (Ind. 1999); *Burris v. State,* 558 N.E.2d 1067, 1075–76 (Ind.1990). Nonetheless, jurors in a death penalty case have widely differing views on the significance of mitigating evidence, and it is difficult if not impossible to know what evidence might sway an individual juror to vote against a recommendation of death. I believe the trial court's ruling significantly hampered Azania's ability to argue that the mitigating circumstances outweighed the aggravating ones. The excluded evidence was in no way cumulative. Indeed, because of the trial court's ruling, Azania was left to argue as mitigation only that his co-defendants had not been sentenced to death and that, in light of the forensic evidence, he may not have fired the fatal shot. ·

The United States Supreme Court has observed that "the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime." *Penry v.* *Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring) (emphasis omitted)). Although the jury heard a great deal about Azania's crime, the trial court's ruling prevented it from hearing anything about Azania's background. Although many or even most of the jurors may have found the proffered mitigating evidence insignificant in comparison to the aggravating circumstances, I cannot exclude the possibility that some would not have arrived at that conclusion. *Cf. Smith v. State,* 547 N.E.2d 817, 822 (Ind.1989) ("In the absence of any evidence of mitigating circumstances ... or of evidence to rebut the existence of the charged aggravating factors, a death sentence is a foregone conclusion.") Accordingly, the death sentence should be vacated and this case should be remanded for a new penalty phase in which a jury may receive the claimed mitigating evidence of Azania's background without hearing the prior homicide evidence.