**Allan K. HOLLOWELL, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S00–9912–CR–688.

Supreme Court of Indiana.

Aug. 20, 2001.

Terrance W. Richmond, Milan, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Allan K. Hollowell was convicted of drug dealing and possession after the police found drugs and other paraphernalia during a traffic stop. We affirm his convictions, finding the search pursuant to a lawful arrest, Defendant's claim that he

was improperly prevented from questioning a witness not available on appeal, and the State's use of a prior conviction's case chronology in the habitual offender stage proper despite his stipulation to that conviction.

*Background*

The facts most favorable to the trial court's judgment indicate the following. On November 14, 1998, Deputy Catherine Hedges stopped a truck that was traveling 56 m.p.h in a 35 m.p.h zone. As she approached the vehicle, Defendant "abruptly exited the [truck]." She told him to get back inside the truck and he complied. Deputy Hedges noticed that while Defendant was back in the truck he was taking his hand in and out of his pockets. Because she felt threatened by Defendant's movements, she called for backup. Soon thereafter, Deputy Bennett arrived in response to her call.

Deputy Hedges again approached Defendant's vehicle. Defendant yelled out his window that his driver's license was suspended. Deputy Hedges told Defendant to exit the vehicle and arrested him. Deputy Bennett then searched Defendant, finding marijuana and crack cocaine in his pockets. The officers searched the truck and found a set of scales, a laptop computer, a box of plastic sandwich bags, and a large quantity of cocaine inside the truck. Later, officers found an additional piece of crack cocaine in Defendant's jacket pocket.

A jury found Defendant guilty of Dealing Cocaine, a Class A Felony;[1] Posses-

sion of Cocaine, a Class C Felony;[2] Possession of Marijuana, a Class A Misdemeanor;[3] and Driving While Suspended, a Class A Misdemeanor.[4] The jury also found Defendant to be a habitual offender.[5]

*Discussion*

I

Defendant contends that the trial court committed reversible error by refusing to exclude the evidence police discovered searching Defendant's person and his truck.

Defendant argues that Deputy Bennett's pat down search of Defendant in which he found drugs violated the rules of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that police may conduct a patdown search upon reasonable suspicion that a person is carrying a weapon.) Additionally, Defendant maintains that the trial court should have suppressed the evidence found in Defendant's vehicle because the authority to search was based on the initial illegal search.

We find that the evidence was not seized based on the authority of *Terry* but rather on the authority to search an individual incident to a lawful arrest.

 The Fourth Amendment[6] protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Mapp v. Ohio*, 367 U.S. 643, 650, 81

---

**1.** Ind.Code § 35–48–4–1 (1998).

**2.** *Id.* § 35–48–4–6. (1998).

**3.** *Id.* § 35–48–4–11 (1998).

**4.** *Id.* § 9–24–18–5 (1998).

**5.** *Id.* § 35–50–2–8 (1998).

**6.** The Fourth Amendment to the United States Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Generally, the Fourth Amendment prohibits warrantless searches and seizures. *See Trowbridge v. State*, 717 N.E.2d 138, 143 (Ind.1999), *reh'g denied*. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *See Berry v. State*, 704 N.E.2d 462, 465 (Ind.1998) (citing *Brown v. State*, 691 N.E.2d 438, 443 (Ind.1998)). One well-recognized exception to the warrant requirement is a search incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Under this exception, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his immediate control. *Id.* Additionally, when officers arrest a defendant who is in an automobile, they are permitted to search the entire passenger compartment of the vehicle. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Here, the facts most favorable to the trial court's ruling indicate that the officers had probable cause to arrest Defendant because he told Deputy Hedges that he was driving with a suspended license. The officers therefore conducted a proper search incident to a lawful arrest.

## II

Defendant contends that the trial court committed reversible error by denying him the opportunity to present certain exculpatory evidence. *See* Appellant's Br. at 13.

In an interview following his arrest, Defendant told Detective Maxey that the drugs discovered in the truck were not his. According to Defendant, he found the marijuana, the cocaine, and the wad of money in the glove box of the truck he was driving at the time of his arrest. Defendant said that the truck belonged to his friend, Antwone Chaney.

Prior to trial, the trial court granted Defendant's motion *in limine* barring the State from offering any statements that Defendant made concerning his prior association with Chaney. The trial court also suppressed the statements Defendant made to Detective Maxey after being taken into custody because Defendant had not been read his Miranda rights.

At trial, Defendant asked to cross-examine Detective Maxey in order to elicit evidence of Defendant's exculpatory statements. The trial court responded that it would permit the questioning with the understanding that it might well open the door for the State to elicit evidence of additional statements that Defendant made to Detective Maxey that would have otherwise been suppressed. The court said:

> Well, if you're gonna ask about his statements, it's gonna open a bit of a door. How much of a door, I guess it depends on what you ask .... what you ask him to say or what you ask somebody else to say about him. You asked that his statements be suppressed, and therefore, they can't use them. If you're gonna use them, you're gonna open a bit of a door. I don't know how much it's gonna open it.

(R. at 234.) Defendant did not pursue the matter further; he neither questioned Detective Maxey about Defendant's statements nor sought further clarification from the trial court as to how far it would permit the questioning to go.

■ In order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine. *Azania v. State*, 730 N.E.2d 646, 651 (Ind.2000), *reh'g denied; Miller v. State*, 716 N.E.2d 367, 370 (Ind.1999). Absent either a ruling admitting evidence

accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error. *See* Ind. Evidence Rule 103(a). Neither the trial court's ruling on the motion *in limine* nor its subsequent comments on "opening the door" prevented the defense from questioning Detective Maxey about Defendant's statements. Defendant had a choice between the perceived advantages of the evidence of his exculpatory comments to police and the disadvantages of his other statements. Defendant had successfully obtained a pretrial ruling preventing the State from presenting evidence it deemed detrimental to Defendant's interests and then made a strategic decision not to risk admission of such excluded evidence. *See Azania*, 730 N.E.2d at 651. We find no error presented by these facts.

### III

Defendant contends that he was unfairly prejudiced during the habitual offender stage when the trial court admitted, over his objection, the chronological case summary (trial court docket) from a prior conviction.

"The state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions." Ind.Code § 35–50–2–8. (1998) The State sought such a habitual offender enhancement to Defendant's sentence in this case.

After the jury's verdict in the guilt phase of this case, but prior to the habitual phase, Defendant stipulated to the two predicate felonies charged by the State in the habitual offender count. These were a 1985 conviction for theft, a Class D felony,

and a 1993 conviction for battery, a Class C felony. Notwithstanding the stipulation, the State submitted evidence regarding Defendant's prior convictions. Defendant objected to the introduction of the case chronology with respect to the 1993 battery conviction but did not object the State's other evidence.

The evidence admitted without objection consisted of the charging information for each of Defendant's prior convictions. For the first conviction, the information indicated that the State charged Defendant of burglary and theft. The information for the battery conviction indicated that he had been charged initially with attempted murder.

As noted, the evidence that was admitted over Defendant's objection consisted of the case chronology with respect to the battery conviction. A thorough reading of the chronology indicates that Defendant was charged initially with attempted murder but subsequently pled guilty to and was convicted of battery.[7] The principal problem with the chronology is that the copy of the court's order of judgment included with the chronology mistakenly indicates that Defendant actually convicted of attempted murder (rather than battery). At the top of the order, it states "The defendant was found [g]uilty of the following crimes ... A/MURDER/F." However, the chronology itself indicates that Defendant in fact pled guilty to and was convicted of battery and that the State dropped the attempted murder charge.

■ Defendant challenges the admission of the case chronology on two grounds. First, Defendant contends that the case chronology was unnecessary because he stipulated to the prior convictions. Defendant also contends that the chronology was unduly prejudicial because

---

**7.** It also clearly indicates numerous probation violations by Defendant.

it indicated that Defendant had been convicted of attempted murder.

Defendant notes that we have stated in the past that stipulations by both parties may limit facts in issue, and consequently, admissibility of evidence relevant to establishing those facts. *See Butler v. State,* 647 N.E.2d 631, 634 (Ind.1995). Here, however, evidence of his prior convictions was still relevant even after Defendant's stipulation.

 So long as done so consistent with applicable rules of evidence, evidence of the two predicate felonies in the face of a stipulation is admissible during the habitual offender stage of a trial. In the habitual offender stage, the jury has discretion to determine whether a defendant is a habitual offender "irrespective of the uncontroverted proof of prior felonies." *Seay v. State,* 698 N.E.2d 732, 737 (Ind. 1998). Because "the jury is the judge of both the law and facts as to that issue," *see id.,* the facts regarding the predicate convictions are relevant to the jury's decision whether or not to find a defendant to be a habitual offender.

 We also find no prejudice from the inclusion of the case chronology. Although there was a mistake on the judgment order with respect to the prior battery conviction, we find no error. Defendant and the State both clearly indicated to the jury that Defendant's prior conviction was for battery, not attempted murder. During the State's closing argument, the prosecutor said:

> Ladies and gentlemen, you just heard the stipulation. The Defendant just stipulated that he ... was convicted [and] sentenced for a felony theft. Then he was charged, convicted, [and] sentenced for a felony battery as a C felony, and then he was charged, and you just

convicted him of the offense in the first phase of the trial.

(R. at 431.) Defendant's counsel also indicated to the jury that the prior felonies were for theft and battery:

> He has served his time on that D felony theft that was back in 1985. He served his time, a minor felony. It's done, it's over with, it's finished. He served it. He has served his time on the C felony battery. It is finished, it is done. It is over with. He paid his price to you and to me and to whatever victims existed in those particular cases. He did that. He's not here for another felony battery. He's not here for another felony theft. He's paid for those.

(R. at 432–33.)

The State, in rebuttal, again referred to Defendant's two convictions, stating, "[Defendant] did serve his time for D felony theft. .... He did serve his time for the C felony battery.... Today, he showed you that he came back after he got finished doing his time on those other two, came back and violated the law again." (R. at 434.)

Given the repeated references to Defendant's past crimes as being for theft and battery, we find no likelihood that the jury thought that one of the predicate offenses was attempted murder.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and BOEHM, J., concur.

RUCKER, J., concurs in part and dissents in part with separate opinion in which DICKSON, J., concurs.

RUCKER, Justice, concurring in part and dissenting in part.

Even though Hollowell stipulated to the predicate offenses underlying the habitual offender allegation, the State nonetheless proceeded to introduce the case chronology into evidence. The majority condones this procedure because "the facts regarding the predicate convictions are relevant to the jury's decision whether or not to find a defendant to be a habitual offender." Op. at 617 (citing *Seay v. State*, 698 N.E.2d 732, 736–37 (Ind.1998)). I disagree. Because of Article 1, Section 19 of the Indiana Constitution, the jury is empowered to render a verdict that a defendant is not a habitual offender even if it finds that the State proved beyond a reasonable doubt that the defendant had accumulated two prior unrelated felonies. *Seay*, 698 N.E.2d at 734. This right of an Indiana jury in a criminal case not to be bound to convict even in the face of proof beyond a reasonable doubt allows the jury to consider mercy in its deliberations. *See Pope v. State*, 737 N.E.2d 374, 379 (Ind.2000), *reh'g denied; Bivins v. State*, 642 N.E.2d 928, 946, (Ind.1994). Any consideration of mercy in this case was very likely eliminated by the erroneous and prejudicial information contained in the case chronology. Therefore, I would reverse the habitual offender adjudication. In all other respects I concur with the majority.

DICKSON, J., concurs.