Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**DONALD E. HAMILTON**
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 18 2013, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS L. LLOYD, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A04-1207-CR-431 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1110-FD-1884

**February 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Dennis L. Lloyd, Jr. ("Lloyd") was convicted after a jury trial of possession of cocaine[1] as a Class D felony and resisting law enforcement[2] as a Class A misdemeanor. He appeals his convictions and raises the following consolidated and restated issues on appeal:

I.   Whether the trial court abused its discretion when it admitted evidence obtained by the police as a result of a stop of Lloyd's vehicle and a search of his person; and

II.  Whether systematic racial discrimination in the Hancock County jury system constituted a denial of Lloyd's right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, section 13 of the Indiana Constitution.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of October 24, 2011, Hancock County Deputy Sheriff Gary Stanley ("Deputy Stanley") was patrolling a rural area of Hancock County when he drove past a residence at 6229 West County Road 300 North and observed two vehicles, a green minivan and a black Ford Explorer, backed up to the residence. Deputy Stanley also saw a large male on the front porch of the residence pacing back and forth and possibly looking into the windows. Deputy Stanley found this behavior to be odd because of his knowledge of the occupant of the home. The residence was occupied by a severely handicapped twenty-year-old woman, who was paralyzed from the jaw down and confined to an air mattress on the front living room floor, and who must be cared for by

---

[1] *See* Ind. Code § 35-48-4-6.

[2] *See* Ind. Code § 35-44-3-3. We note that this section was repealed by Public Law 126-2012, section 53, effective July 1, 2012, and it can now be found at Indiana Code section 35-44.1-3-1.

others. He also knew that the front door was not utilized by the occupant due to her need of a wheelchair ramp. Additionally, Deputy Stanley knew that the residence was in a high burglary and theft area. Because Deputy Stanley was suspicious of the two vehicles backed up to the house, he radioed Hancock County Sheriff's Deputy Jarrod Bradbury ("Deputy Bradbury")[3] to have him accompany Deputy Stanley to the residence. They met up a short distance away from the residence and drove their patrol cars to the home to investigate.

When the deputies arrived at the residence, the Ford Explorer appeared to be attempting to leave. Deputy Stanley pulled into the driveway behind the Ford Explorer, and Deputy Bradbury pulled in behind Deputy Stanley. Deputy Stanley approached the driver's side of the Ford Explorer, and Deputy Bradbury approached the passenger side. The driver, who was later identified as Lloyd, was the sole occupant of the vehicle. Deputy Stanley also identified Lloyd as the large male he had observed pacing back and forth in front when he initially drove by the residence.[4]

Lloyd's window was rolled down an inch or two, and Deputy Stanley asked that Lloyd roll the window down so the deputy could speak with him. Lloyd did not comply until after Deputy Stanley had requested him to do so three times. Deputy Stanley requested identification from Lloyd, but Lloyd did not provide any. Lloyd refused to

---

[3] We note that subsequent to the events in this case, Deputy Bradbury was promoted and now has the title of Deputy Sergeant. *Tr.* at 102.

[4] The driver of the green minivan attempted to approach Deputy Stanley, but the deputy told him to return to his vehicle, so that Deputy Stanley could deal with one individual at a time for officer safety. Later, the driver of the green minivan re-approached Deputy Stanley and told the deputy he worked for a home healthcare agency and was at the residence to retrieve home medical supplies. *Tr.* at 104. The man produced a clipboard with the letterhead of the agency and documentation substantiating his explanation for being at the residence. *Id.*

3

look at the deputy and was moving around in the vehicle. After Lloyd complied with the request to roll down his window, Deputy Stanley smelled the odor of burnt marijuana coming from the vehicle. Deputy Stanley then requested that Lloyd exit the vehicle, but Lloyd did not comply. Deputy Stanley repeated his request several times, and Deputy Bradbury came over to the driver's side to assist Deputy Stanley in removing Lloyd from the vehicle. When Deputy Bradbury opened up the driver's side door and attempted to remove Lloyd, Lloyd forcibly resisted by pushing away from and trying to strike the deputy. Deputy Stanley then threatened to use his taser on Lloyd if he did not allow the deputies to remove him from the vehicle.

Once Lloyd finally agreed to exit the vehicle, Deputy Bradbury handcuffed him, and Deputy Stanley conducted a patdown search of Lloyd's person. During this search, a baggie was found in Lloyd's pants pocket that contained a powdered rock-like substance that field tested positive for cocaine. After being read his *Miranda* rights, Lloyd admitted that the substance recovered from his pocket was, in fact, cocaine. A knife was also recovered from Lloyd's person.

The State charged Lloyd with Class D felony possession of cocaine and Class A misdemeanor resisting law enforcement. Prior to trial, Lloyd filed a motion to suppress the evidence obtained by the deputies. A hearing was held, and the trial court denied the motion. A jury trial was held on June 4, 2012, at the conclusion of which the jury found Lloyd guilty as charged. He was sentenced to two years with one year suspended and one year of probation for his possession of cocaine conviction and to a concurrent sentence of one year for his resisting law enforcement conviction. Lloyd now appeals.

4

## DISCUSSION AND DECISION

### I. Admission of Evidence

Lloyd argues that the trial court abused its discretion when it admitted evidence at trial because it was obtained in violation of the Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution.[5]  Although Lloyd originally challenged the admission of the evidence through a pre-trial motion to suppress, he appeals following a completed jury trial and thus challenges the admission of such evidence at trial.  The admission or exclusion of evidence is entrusted to the discretion of the trial court.  *Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012) (citing *Farris v. State,* 818 N.E.2d 63, 67 (Ind. Ct. App. 2004), *trans. denied*).  We will reverse a trial court's decision only for an abuse of discretion.  *Id.*  We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant.  *Id.* (citing *Taylor v. State,* 891 N.E.2d 155, 158 (Ind. Ct. App. 2008), *trans. denied*, *cert. denied* 555 U.S. 1142 (2009)).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law.  *Id.*  In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury.  *Id.* (citing *Oldham v. State,* 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002), *trans. denied*).

The Fourth Amendment to the United States Constitution protects an individual's

---

[5] Although Lloyd makes several references to Article I, section 11 of the Indiana Constitution, he makes no actual analysis or cogent argument under the reasonableness standard of the Indiana Constitution.  Therefore, he has waived any appeal based on Article I, section 11 of the Indiana Constitution.  *See Micheau v. State*, 893 N.E.2d 1053, 1059 n.8 (Ind. Ct. App. 2008), *trans. denied*.

privacy and possessory interests by prohibiting unreasonable searches and seizures. *Washington v. State*, 922 N.E.2d 109, 111 (Ind. Ct. App. 2010) (citing *Howard v. State,* 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007)). Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Id*. (citing *Halsema v. State,* 823 N.E.2d 668, 676 (Ind. 2005)). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Malone v. State*, 882 N.E.2d 784, 786 (Ind. Ct. App. 2008)).

### A. Investigatory Stop

One such exception to the warrant requirement is that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity "may be afoot." *Washington*, 922 N.E.2d at 111-12 (citing *Moultry v. State,* 808 N.E.2d 168, 170-71 (Ind. Ct. App. 2004) (citing *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968))). Thus, reasonable suspicion to justify an investigative stop must be based on specific and articulable facts known to the officer at the time of the stop that led the officer to believe that criminal activity may be afoot. *Potter v. State*, 912 N.E.2d 905, 907 (Ind. Ct. App. 2009). Reasonable suspicion requires more than mere hunches or unparticularized suspicions. *Id.* "In reviewing the question of reasonable suspicion, courts look to the 'totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *Segar v. State*, 937 N.E.2d 917, 921 (Ind. Ct. App. 2010) (quoting *United States v. Arvizu,* 534

U.S. 266, 273 (2002) (quotations omitted)). The State has the burden of proving that an investigatory stop, as an exception to the general warrant requirement of the Fourth Amendment, is supported by reasonable suspicion. *Id.*

Lloyd argues that the deputies did not have reasonable suspicion that criminal activity may be afoot at the time they approached his vehicle to speak with him. He contends that, although Deputy Stanley clearly had reasonable suspicion when he observed a male at the front door of the residence looking in the windows, by the time the deputy approached Lloyd, such reasonable suspicion "was severely reduced." *Appellant's Br.* at 8. Lloyd asserts that the deliveryman's explanation for his presence at the residence should have lessened any reasonable suspicion that the deputies had that criminal activity was afoot and that the deputies no longer needed to demand information from him. We disagree.

While patrolling a rural area of Hancock County, Deputy Stanley saw two vehicles, a green minivan and a black Ford Explorer, backed up to the residence as he drove past. He observed a large male pacing back and forth on the front porch of a residence and possibly looking in the windows of the residence. Deputy Stanley found this to be suspicious because he was aware that the resident at that address was severely handicapped, confined to her bed, and was cared for by caretakers. He knew that the resident and her caretakers did not regularly use the front porch entrance. The deputy was also aware that the residence was in a high burglary and theft area. These facts supported a finding that reasonable suspicion existed that criminal activity may be afoot.

We do not believe that any explanation by the deliveryman as to why he was present at the residence diminished the reasonable suspicion of the deputies. Although Lloyd argues that the deliveryman explained his presence at the residence before Deputy Stanley approached Lloyd's vehicle, the deputy actually testified that the deliveryman initially approached him, but the deputy told him to return to his vehicle, so that Deputy Stanley could deal with one individual at a time for officer safety. *Tr.* at 104. Later the driver of the green minivan re-approached Deputy Stanley and told the deputy he worked for a home healthcare agency and was at the residence to retrieve home medical supplies. *Id.* Further, Deputy Stanley stated that Lloyd was the individual he observed on the porch because Lloyd was much larger in stature than the deliveryman and more closely resembled the description of the man the deputy observed. *Id.* at 103. Even if Lloyd's assertion that Deputy Stanley was already aware of the deliveryman's reason for being at the residence before he spoke with Lloyd was true, it does not diminish the deputy's reasonable suspicion. Deputy Stanley observed a man who resembled Lloyd pacing back and forth on the front porch of a residence in a high burglary area, where the deputy was aware of circumstances of the resident that made Lloyd's presence suspicious. The reasonable suspicions of the deputy were not abated merely because one of the men present may have given an explanation for his presence. We therefore conclude that reasonable suspicion existed to support the investigatory stop of Lloyd.

"'[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's

8

suspicion in a short period of time.'"  *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (quoting *Lockett v. State*, 747 N.E.2d 539, 541 (Ind. 2001)).  Our Supreme Court has recognized that the Fourth Amendment permits an officer to request a motorist to exit a car as part of an investigatory stop.  *Id*. (citing *Lockett,* 747 N.E.2d at 542). Therefore, as part of the investigatory stop of Lloyd, Deputy Stanley was permitted to request that Lloyd roll down his window so that the deputy could speak with him and determine Lloyd's identity and reason for being at the residence.

## *B. Search*

A police officer may search a defendant pursuant to a lawful arrest.  *Williams v. State*, 898 N.E.2d 400, 402 (Ind. Ct. App. 2008) (citing *Hollowell v. State,* 753 N.E.2d 612, 615 (Ind. 2001)), *trans. denied*.  Searches incident to arrest are permissible without a warrant and include search of the arrested person and the area within his immediate control.  *Id.*  In order for such a search to be lawful, the initial arrest must be lawful.  *Id.* Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act.  *Merchant v. State*, 926 N.E.2d 1058, 1064 (Ind. Ct. App. 2010), *trans. denied*.

Lloyd contends that the trial court should not have admitted the evidence obtained by the deputies because there was not probable cause to conduct a search because the deputies' testimony regarding the odor of burnt marijuana emanating from his vehicle was conflicting.  Because of the conflicting nature of this testimony, Lloyd alleges the State did not carry its burden of proving that the search fell within one of the exceptions

9

to the warrant requirement. Therefore, he asserts that any evidence obtained as a result of this unlawful search should not have been admitted at trial.

The evidence presented at trial showed that, when Lloyd rolled down the driver's side window, Deputy Stanley smelled the odor of burnt marijuana coming from inside of Lloyd's vehicle and requested that Lloyd exit the vehicle. Pursuant to both the Fourth Amendment and Article I, section 11 of the Indiana Constitution, when a trained and experienced police officer detects the strong and distinctive odor of burnt marijuana coming from a vehicle, the officer has probable cause to search the vehicle. *State v. Hawkins*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002), *trans. denied*. Because Deputy Stanley had probable cause at that point to search the vehicle, he was also justified in asking Lloyd to exit the vehicle. Further, contrary to Lloyd's contention that the deputies' testimony was conflicting regarding the smell of burnt marijuana, both Deputy Stanley and Deputy Bradbury testified that they smelled the odor of burnt marijuana coming from Lloyd's vehicle. Deputy Stanley smelled it as soon as Lloyd rolled down the driver's side window, and although Deputy Bradbury could not smell it when he was positioned on the passenger side of the vehicle, he testified that he did smell the odor of burnt marijuana later. *Tr.* at 130.

When Deputy Stanley requested that Lloyd exit the vehicle, Lloyd refused to do so. In fact, he forcibly resisted the deputy's request. Deputy Stanley repeated his request several times, and Deputy Bradbury came over to the driver's side to assist Deputy Stanley in removing Lloyd from the vehicle. When Deputy Bradbury opened up the driver's side door and attempted to remove Lloyd, Lloyd forcibly resisted by pushing

10

away from and trying to strike the deputy. Therefore, after the deputies were able to get Lloyd to exit the vehicle, they had probable cause to arrest him for resisting law enforcement. Because the deputies had probable cause to arrest Lloyd, the search conducted that resulted in the discovery of cocaine in Lloyd's pocket did not violate the Fourth Amendment because it was a search incident to arrest. We therefore conclude that Lloyd's Fourth Amendment rights were not violated, and the trial court did not abuse its discretion in admitting the testimony and evidence obtained by the deputies.

## II. Systematic Racial Discrimination

Lloyd contends that the jury panel failed to reflect a fair cross-section of the Hancock County community. The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial. *Williams v. State*, 877 N.E.2d 845, 846 (Ind. Ct. App. 2007) (citing *Wilder v. State,* 813 N.E.2d 788, 791 (Ind. Ct. App. 2004), *trans. denied* (citing *Taylor v. Louisiana,* 419 U.S. 522, 528 (1975))), *trans. denied*. There is no requirement, however, that jury panels be a microcosm of a county or a court district. *Id.* at 846-47. Jurors need not be mathematically proportioned to the character of the community. *Id.* at 847. The primary concern is that juror selection not be arbitrary. *Id.*

In order to succeed on a challenge to a county's petit jury selection process, a defendant must first make a prima facie showing of a violation of the fair cross-section requirement. *Id.* To make such a showing, the defendant has the burden of establishing: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair

11

and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Id.* If a defendant has made a prima facie showing of a fair cross-section violation, the State may still justify the juror selection process by showing that attainment of a fair cross-section is incompatible with a significant state interest. *Id.*

Here, Lloyd did not raise this argument at trial. He, therefore, presented no evidence to the trial court of any systematic racial discrimination in the Hancock County petit jury selection process, and nothing in the record before us indicates a problem. Lloyd also does not present any evidence or make any cogent argument regarding his contention in his appellate brief. He has therefore failed to demonstrate that the jury selection process in Hancock County systematically excludes any cognizable racial group. Because Lloyd did not raise this issue at trial and has failed to make a cogent argument on his contention here on appeal, we conclude that the issue has been waived. *See Mallory v. State*, 954 N.E.2d 933, 936 (Ind. Ct. App. 2011) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.").

Affirmed.

MATHIAS, J., and CRONE, J., concur.