**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 30 2014, 7:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BENJAMEN W. MURPHY**
Law Office of Ben Murphy
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN KRYZA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  64A05-1305-CR-239 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Julia M. Jent, Judge
Cause No. 64D03-1205-CM-4677

**January 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant John Kryza told the arresting police officer, who arrived at the scene of an accident on a county road in Porter County, that he drank three beers and struck a deer with his vehicle. Following his convictions for several drunk driving-related offenses, Kryza raises a number of issues, challenging the trial court's admission of certain evidence and the exclusion of other evidence, including (1) the trial court's propriety of excluding the Porter Emergency Medical Services no transport and/or refusal of service report (medical report); whether: (2) Kryza's toxicologist was improperly precluded from testifying about the alleged defects and shortcomings of the DataMaster machine and test; (3) it was proper for the breath test operator to render an opinion regarding the accuracy of the breath test results; (4) the trial court abused its discretion excluding certifications from other DataMaster machines that were not actually used in this case; and (5) the trial court's admission of certifications of compliance of the DataMaster instrument violated Kryza's right to confrontation under the Sixth Amendment to the United States Constitution.

Concluding that Kryza waived several issues because he did not make an offer of proof regarding the admission of evidence, that the breath test officer did not testify directly that Kryza was innocent or guilty of the charged offenses, that Kryza's right to confrontation was not violated, and finding no other error, we affirm the judgment of the trial court.

2

## FACTS

On May 6, 2012, at approximately 4:30 a.m., the Porter County Sheriff's Department received a 911 call regarding a vehicular crash in the area of County Road 450 West and 100 South.

Officer Thomas Blythe responded to the call and observed a Nissan Maxima lying on its roof in a field off the roadway. Officer Blythe then noticed an individual, who was later identified as Kryza, looking at the vehicle from the road. Officer Blythe noticed that Kryza had fresh wounds on his hands and was bleeding. Kryza informed Officer Blythe that he was the driver of the vehicle, had struck a deer, and admitted that he drank three beers earlier that evening. Kryza produced his driver's license and vehicle information.

Officer Blythe noticed that Kryza exhibited several signs and symptoms of intoxication, including the odor of alcohol on Kryza's breath, bloodshot eyes, and unsteady balance. Porter Emergency Services personnel responded to the scene, placed Kryza in an ambulance, and examined him for injuries. Kryza refused to be transported to the hospital for further treatment.

After Kryza exited the ambulance, he complied with Officer Blythe's request to submit to standardized field sobriety tests. Officer Blythe administered the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Kryza failed all three tests. Officer Blythe administered a portable breath test and based on the results, Officer Blythe concluded that he had probable cause to believe that Kryza committed the offense of operating a motor vehicle while intoxicated.

3

In accordance with departmental procedure, Officer Blythe read Indiana's Implied Consent law to Kryza, after which Kryza agreed to take a chemical test. At 5:06 a.m., Officer Blythe checked Kryza's mouth and noticed that there were no foreign objects in it. Officer Blythe then transported Kryza to the Porter County Jail. When they arrived at the jail at approximately 5:25 a.m., Officer Blythe again examined Kryza's mouth and saw no foreign objects.

At 5:33 a.m., Officer Ronald Chapman administered a breath test to Kryza using the DataMaster machine. It was subsequently determined that the machine was certified and in proper working condition on April 16, 2012, which was six weeks before the test was administered. The instrument was also certified and found to be in working order on September 12 and 18, 2012. The breath test indicated that Kryza had an ACE of .08 per 210 liters of breath. As a result, Officer Blythe arrested Kryza for operating while intoxicated and left him in the custody of the Porter County Jail.

On May 9, 2012, the State charged Kryza with Count I, operating a vehicle while intoxicated (OWI) in a manner that endangers a person,[1] a class A misdemeanor, Count II, OWI with an alcohol concentration equivalent (ACE) of at least .08 grams but less than .15 grams of alcohol,[2] a class C misdemeanor, and Count III, OWI,[3] a class C misdemeanor.

---

[1] Ind. Code § 9-30-5-2(b).

[2] I.C. § 9-30-5-1(a).

[3] I.C. § 9-30-5-2.

Prior to trial, the State filed three motions in limine, and the trial court conducted a hearing on those motions. The first motion sought to prevent Kryza's expert witness and toxicologist, Dr. John Bederka, from testifying as to the reliability of the DataMaster machine. The trial court determined that Dr. Bederka lacked knowledge and experience about the DataMaster instruments, and was therefore not permitted to offer his opinion regarding the use and accuracy of the DataMaster instrument.

The State also sought to exclude Dr. Bederka's testimony on the grounds that he was not qualified to testify that an individual's "breath score could change over time due to the test being performed within three hours." Tr. p. 2-21. Kryza countered that Dr. Bederka was qualified to testify based upon his education and experience about how alcohol affects the body and argued that because Dr. Bederka was a toxicologist, he was qualified to testify about the science regarding the DataMaster.

The State also sought to exclude the admission of the medical report on the basis that it was hearsay and that a witness had to be present and be subjected to cross-examination. Moreover, the State pointed out that Kryza disclosed the medical report on the evening prior to trial. Kryza maintained that the medical report was a certified business record and, therefore, was an exception to the hearsay rule. Accordingly, it did not contain expert opinion evidence that required the witness to appear and testify.

The trial court determined that Dr. Bederka could testify as to how alcohol metabolizes, but precluded him from offering testimony and other evidence about the accuracy of the DataMaster machine and tests. The trial court further refused to admit

5

the medical report into evidence, which stated that "as best that can be determined by the EMT/Paramedic, the patient is of sound mind and competent. The patient does not appear to be impaired by drugs or alcohol, has normal mental status, normal speech and appropriate thinking." Tr. p. 28. Because Kryza had not produced the document until the evening before trial, the State was prevented from subpoenaing the paramedic who made the statements that were recorded in the form. Kryza told the trial court that he would make an offer of proof regarding the medical report during trial, but he never did so.

At Kryza's jury trial that commenced on April 11, 2013, Officer Blythe testified that he had attended fifteen weeks of training at the Northwest Indiana Law Enforcement Academy, which included two days of standardized field sobriety testing training. During his training, Officer Blythe learned how to administer several field sobriety tests. Officer Blythe also learned to recognize the various indicators of intoxication, including watery and bloodshot eyes, slurred and confused speech, unsteady balance, and the odor of alcoholic beverages. Officer Blythe testified that, during his three-year career, he had performed nearly eighty OWI investigations, of which approximately forty-five resulted in arrests.

Officer Blythe testified that after Kryza made the admissions about drinking to him, Kryza stated that he had no physical conditions that might influence the standardized field sobriety tests or render him incapable to perform the tests. As discussed above, Kryza failed all three field sobriety tests and agreed to submit to a chemical test sample. Officer Blythe stated that the road Kryza was driving on was well-

6

traveled, and that it was unlikely that someone could have suffered an accident on that road without it being reported within an hour.

Officer Chapman, the officer who administered the DataMaster test on Kryza, testified that prior to becoming a breath test operator, he underwent initial training of twelve hours and, afterwards, would undergo recertification training every two years. Officer Chapman also testified that he was certified to operate the DataMaster instrument. Officer Chapman stated that, in light of his experience and knowledge, DataMaster instruments similar to the one he used in this case were used throughout Indiana. Officer Chapman testified that, pursuant to his training, a twenty-minute observation period allowed the residual alcohol in the mouth of the subject to dissipate so as to ensure an accurate blood alcohol result. Officer Chapman also testified that he used DataMaster Instrument 990170 to administer Kryza's test.

Kryza did not object when the trial court took judicial notice of the approved method, and he did not raise any issues in administering the breath test to Kryza. Officer Chapman also testified that each DataMaster instrument must be inspected, approved, and certified once every six months or 180 days.

The State introduced documentation that Instrument 990170 was certified on April 16, 2012, and again on September 18, 2012. Kryza objected on confrontation grounds that the individual who certified the DataMaster on these two dates was not present to testify about the certification. The trial court overruled Kryza's objection. The DataMaster evidence ticket showed that Kryza's ACE at 5:33 a.m. on May 6, 2012, was

.08 grams per 210 liters of breath. Officer Chapman testified that "based upon [his] training and experience," he did not "have [a] doubt as to the accuracy of the defendant's blood alcohol results." Tr. p. 118. At this point, the following exchange occurred:

> Kryza's Counsel: Judge, I'm going to object this is an ultimate issue, he can't give an opinion as to the ultimate issue whether it's inaccurate, that's for the jury to decide.

> By the Court: He can give his opinion Counsel. As long as it's understood that [it is] his opinion. Go ahead.

Tr. p. 118-19.

Kryza also attempted to introduce certifications of compliance for three different DataMaster instruments that had not been used in the instant case. The State objected to the documents that involved the other machines on relevancy grounds, and the trial court sustained the State's objection. Kryza claimed that Instrument 990170 and the other three DataMaster instruments were all certified on April 16, 2012 by Justus Littlejohn, and although the other three DataMaster instruments were then certified six months later on October 12, 2012, as mentioned above, Instrument 990170 was certified twice—only a week apart—in September 2012. Kryza stated that he "would just like to offer these as a part of my earlier confrontation objection." Tr. p. 130. The State rested after Officer Chapman's testimony. The trial court also denied Kryza's motion for a directed verdict on the operating while intoxicated endangering a person charge.

Outside the jury's presence, Kryza made an offer of proof as to Dr. Bederka's qualifications to testify as an expert regarding the DataMaster instrument. Dr. Bederka

8

testified about his qualifications, and stated that twenty years ago he authored an article regarding the detection of alcohol in a person's body. Although Dr. Bederka never explicitly testified what the article was about, he stated that he examined the data of other scientists who had examined breath test instruments. Dr. Bederka stated that the article was "peer reviewed" by "a scientist who was [his] boss at the time" and a "librarian." Id. at 149. Dr. Bederka made the following remarks about the methodologies that he used in authoring the article:

> And the table that I just referenced that had the wide range of blood/breath ratio, I took the data from several articles if I recall, and put the ranges on to them of plus or minus five percent (5%) which is what I think I have in the article. So, all of the data in there were data that I either extracted directly or changed a little. I might have put a line on a figure where there wasn't a line before, but I referenced the sources of all of the things that I used.

Tr. p. 150-51.

Dr. Bederka admitted that he has never performed any empirical research with DataMaster instruments, and that the "only thing" he has done with DataMaster instruments [was] that he "bought their manual and they sent it to [him] about . . . fifteen years ago maybe." Tr. p. 153. Dr. Bederka could not testify whether any of the data relied upon in his article was gathered from DataMaster instruments, and could not identify all the breath test technologies that are used in the articles he cited. The trial court affirmed its earlier decision and ruled that Dr. Bederka could not testify as an expert witness with regard to the DataMaster instrument.

During trial, Kryza did not offer the medical evidence form into evidence, which was the subject of one of the State's third motions in limine. Following a jury trial, Kryza was found not guilty as to Count I, but guilty of Counts II and III. On April 30, 2013, the trial court merged Counts II and III, and sentenced Kryza to sixty days in the Porter County Jail with ten days executed and the remainder suspended. Kryza now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing Kryza's claims of error, we initially observe that the trial court has broad discretion in ruling on the admission or exclusion of evidence. Kimbrough v. State, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. Conrad v. State, 938 N.E.2d 852, 855 (Ind. Ct. App. 2010). An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. Oatts v. State, 899 N.E.2d 714, 719 (Ind. Ct. App. 2009). We will affirm the trial court on any legal basis that is sustainable by the record. Crocker v. State, 989 N.E.2d 812, 818 (Ind. Ct. App. 2013), trans. denied.

We also note that the erroneous admission of evidence is subject to a harmless error analysis. Ind. Trial Rule 61. The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. Greenboam v State, 766

10

N.E.2d 1247, 1250 (Ind. Ct. App. 2002). On the other hand, reversal is warranted when the record reveals that the erroneously admitted evidence was likely to have prejudiced the jury such that it contributed to the guilty verdict. Id.

As for Kryza's confrontation argument under the Sixth Amendment to the Constitution, we note that the admission of testimonial statements by a declarant who is absent from trial and therefore not subject to cross-examination by the accused is generally prohibited. Crawford v. Washington, 541 U.S. 36, 59 (2004). However, there is an exception if the declarant is unavailable and the accused had a previous opportunity to cross-examine the declarant. Id. Moreover, a critical aspect of the holding in Crawford is its application only to "testimonial statements."[4] Ramirez v. State, 928 N.E.2d 214, 217 (Ind. Ct. App. 2010).

## II. Kryza's Claims

### A. Exclusion of Medical Report

Kryza first argues that his convictions must be reversed because the trial court erred in preventing him from introducing the medical report into evidence. Kryza maintains that the report, which indicated among other things that he "did not appear to be impaired by drugs or alcohol, [had] normal mental status, normal speech and

---

[4] Crawford identified "various formulations" of the "core class of 'testimonial' statements": (1) ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52.

11

appropriate thinking," was a certified business record and not hearsay. Appellant's Br. p. 11.

We first note that a motion in limine is not a final ruling on the admissibility of evidence, and a ruling on the motion does not preserve the error for appeal. Our Supreme Court has held that an objection must be specific in order for the issue to be preserved for appellate review. Simmons v. State, 760 N.E.2d 1154, 1158 (Ind. Ct. App. 2002). If the trial court erred in granting or denying a motion in limine, the error is in the admission or exclusion of the evidence at trial and not in the trial court's ruling on the pretrial motion. Herrera v. State, 710 N.E.2d 931, 935-36 (Ind. Ct. App. 1999). Thus, to preserve the issue for appellate review, a party must attempt to admit the evidence at trial and make an offer to prove if the attempt is unsuccessful. Barnett v. State, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009). The purpose of an offer to prove is to preserve for appeal the trial court's allegedly erroneous exclusion of evidence. Nelson v. State, 792 N.E.2d 588, 595 (Ind. Ct. App. 2003). The offer to prove can also aid the trial court in ruling on the objection. Id. An offer of proof consists of three parts: 1) the substance of the evidence; 2) an explanation of its relevance, and 3) the proposed grounds for its admissibility. Id. at 594.

As discussed above, the State filed a motion in limine to exclude the medical form from the evidence that Kryza indicated would be introduced into evidence. Appellant's App. p. 52. The State argued that the form was inadmissible because Kryza had failed to lay the proper foundation to admit the statements contained in the form. Tr. p. 22-23. The trial court granted the State's motion on this matter, citing also the timeliness of

12

Kryza's disclosure of this material.  Id. at 25-28.  Kryza informed the trial court that he would offer to prove the document during trial.  Id. at 28.  Although Kryza labeled this document as exhibit A, he never offered the document into evidence or made an offer to prove this document at trial.  Thus, Kryza has waived the issue.  Barnett, 916 N.E.2d at 287.

Finally, we note that Kryza had over a year to retrieve and produce the document. Had Kryza retrieved the document earlier, the parties would not be discussing the issue on the day of trial.  Tr. p. 25-26.  Here, when the trial court conducted the hearing on the motions in limine, the jury had already been chosen and was ready to be empaneled.

### B.  Toxicologist's Testimony

Kryza next claims that the trial court erred in excluding Dr. Bederka's testimony regarding the DataMaster test's accuracy.  Specifically, Kryza maintains that the evidence presented at trial established that Dr. Bederka was qualified to testify about the operation and reliability of the BAC DataMaster test.

The trial court is the gatekeeper for the admissibility of expert opinion evidence under Indiana Evidence Rule 702.  Doe v. Shults-Lewis Child & Family Servs., Inc., 718 N.E.2d 738, 750 (Ind. 1999).  By requiring trial courts to be satisfied that expert opinions will assist the fact-finder and that the underlying scientific principles are reliable, Evidence Rule 702 guides the admission of expert scientific testimony.  Sears Roebuck & Co. v. Manuilov, 742 N.E.2d 453, 460 (Ind. 2001).

Evidence Rule 702 provides that

13

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony tests are reliable.

In other words, to qualify as an expert, the proponent of the expert must demonstrate that the expert satisfied the criteria for qualifying under Rule 702 (knowledge, skill, experience, training, or education), and will meet a valid purpose under Rule 702 to assist the trier of fact. Person v. Shipley, 962 N.E.2d 1192, 1196 (Ind. 2012). Additionally, an expert must have sufficient skill in the particular area of expert testimony before the expert can offer opinions in that area. Hannan v. Pest Control Servs., Inc., 734 N.E.2d 674, 679 (Ind. Ct. App. 2000).

The trial court must preliminarily assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." Id. While there is no absolute test for determining whether testimony is reliable, some of the factors include whether: 1) the theory or technique can be or has been empirically tested; 2) the theory or technique has been subjected to peer review and/or publication; 3) there is a known or potential rate of error, as well as the existence and maintenance of standards controlling the theory or technique's operation; 4) the theory or technique is generally accepted within the relevant scientific community. Armstrong v. Cerestar USA, Inc., 775 N.E.2d 360, 366 (Ind. Ct. App. 2002).

14

A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion and will be reversed only for an abuse of that discretion. TRW Vehicle Safety Sys., Inc. v. Moore, 936 N.E.2d 201, 216 (Ind. 2010). This court presumes that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade this court that the trial court abused its discretion. Id. The proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles and tests upon which the experts' testimony is based. Hannan, 734 N.E.2d at 679.

In this case, during Kryza's offer of proof, Dr. Bederka testified that the DataMaster instruments use two technologies: electric chemical or fuel cell technology and infrared technology. Dr. Bederka claimed that he understood the infrared technology behind the DataMaster instruments, and spent most of his time attacking the technology, claiming that the instruments cannot accurately determine a person's actual ACE on the idea that the infrared sensors may pick up false positives from molecules other than alcohol. Tr. p. 141-42, 148. However, Dr. Bederka did not explain whether he understood the electric chemical technology. Id. at 140.

As noted above, Dr. Bederka testified that he had authored an article nearly twenty years ago about the detection of alcohol in an individual's body. In that article, Dr. Bederka examined other scientists' data on the accuracy of breath test instruments. Dr. Bederka could not testify about the methodologies that other scientists use or whether any of the data was gathered from DataMaster instruments. Id. at 150-51, 154-55. Dr.

15

Bederka described his method for manipulating the data he relied upon for his article, but could not explain whether his methods conformed to scientific standards. Dr. Bederka also admitted that he has never used or operated any DataMaster instruments, including the one that was used in this case. Id. at 140.

In essence, the trial court concluded that Dr. Bederka had failed to demonstrate whether the methodology he sought to explain in his article—and the methods of others that he relied upon in arriving at his conclusions—were reliable. See Armstrong, 775 N.E.2d at 366. It was determined that Dr. Bederka did not perform any empirical research involving infrared machines or DataMaster instruments. Moreover, he did not claim expertise in the detection of intoxication. The trial court also found that Dr. Bederka's article was not subjected to peer review. Rather, as mentioned above, it was submitted to and edited by his boss and a librarian.

In light of these circumstances, we conclude that the trial court properly exercised its discretion in concluding that Dr. Bederka was not an expert regarding the accuracy and reliability of DataMaster instruments. Thus, the trial court did not err in excluding Dr. Bederka's testimony on this basis.

C. Breath Test Operator's Opinion

Kryza next claims that the trial court erred in permitting Officer Chapman, the breath test operator, to render an opinion that he did not doubt that the breath test result was accurate. Specifically, Kryza argues that the trial court should have excluded the evidence because "it was within the province of the jury to determine whether the breath

16

test results were accurate and Officer Chapman's personal opinion based upon his training and experience violated Indiana Evidence Rule 704(b)." Appellant's Br. p. 26.

In resolving this issue, we note that Indiana Evidence Rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue," unless the opinion concerns "intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

Kryza asserts that the trial court's admission of Officer Chapman's testimony that, "based upon [his] training and experience," he did not "have [a] doubt as to the accuracy of [Kryza's] blood alcohol results," was error because that testimony involved Kryza's guilt or innocence. Tr. p. 118-19. Although Kryza directs us to this court's opinion in Bradford v. State, 960 N.E.2d 871, 876 (Ind. Ct. App. 2012), because it involved an opinion of the "truth or falsity of the allegations" that were brought against the defendant, that case is inapposite here, because it was Officer Chapman's testimony that he did not doubt the accuracy of the test result. Tr. p. 118. Officer Chapman testified earlier in the trial, without objection from Kryza, regarding the operation of the DataMaster machine and stated that he followed the approved method and did not experience any issues in administering the breath test to Kryza.

In other words, Officer Chapman did not testify about his belief regarding Kryza's guilt or innocence, whether the allegations were true or false, or whether any witness testified truthfully. Officer Chapman also offered no legal opinion about the case. Id. at

17

108. In other words, Officer Chapman's statements regarding the accuracy of the DataMaster device that tested Kryza's breath merely assisted the jury in reaching a conclusion about Kryza's guilt or innocence. As a result, we conclude that the trial court did not abuse its discretion in overruling Kryza's objection and admitting Officer Chapman's testimony into evidence.

### D. Admission of Certifications from Other DataMaster Machines

Kryza argues that the trial court erred in refusing to admit certifications from other DataMaster machines that are used in Porter County. Kryza argues that this evidence was relevant because it established that the machine used to test Kryza was not tested properly and was certified on two separate earlier occasions one week apart, which was not normal protocol.

We initially observe that Kryza did not make a proper offer to prove the proffered documents regarding certifications of compliance of three other DataMaster instruments. As a result, there is no basis for a claim of error on a ruling excluding evidence. Hollowell v. State, 753 N.E.2d 612, 615-16 (Ind. 2001). An offer of proof consists of three parts: 1) the substance of the evidence; 2) an explanation of its relevance; and 3) the proposed grounds for its admissibility. Nelson v. State, 792 N.E.2d 588, 594 (Ind. Ct. App. 2003). Here, while Kryza may have demonstrated the substance of the documents and claimed that they were relevant, he did not offer grounds for the admissibility of them. Tr. p. 128-30.

18

As the trial court correctly observed, Officer Chapman could not testify as to the certificates of compliance of the three DataMaster instruments that were not used in this case. Indeed, the evidence established that none of these instruments were kept at the Porter County station where Officer Chapman tested Kryza and two of the three were not even used in Porter County. Id. at 129. Therefore, Kryza failed to make a proper offer of proof and the issue is waived. Hollowell, 753 N.E.2d at 615.

Waiver notwithstanding, Kryza has failed to demonstrate the relevancy of the proffered documents. In accordance with Indiana Evidence Rule 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The proffered documents concerned several DataMaster instruments that were not used in this case and nothing in the record connected these instruments to the DataMaster instrument that was used to test Kryza. In short, neither Officer Chapman nor any other witness at trial could testify about these other DataMaster instruments.

Although Kryza directs us to this court's opinion in Christian v. State, 710 N.E.2d 582 (Ind. Ct. Ap. 1999), we find that case inapposite. In Christian, the challenged evidence concerned the breathalyzer machine that was used to test the defendant. Id. at 582-83. Here, the contested evidence concerned machines that were not used in the instant case. Therefore, the trial court properly excluded the certificates of compliance that Kryza sought to offer into evidence because they were not relevant in this matter.

19

Additionally, even assuming for the sake of argument that the documents should have been admitted into evidence, they were cumulative of other evidence that was offered, and any slight probative value that could be attributed to them would have been greatly outweighed by the danger they posed of misleading the jury. Evid. R. 403.

Officer Chapman had testified that the DataMaster instruments were certified every six months and that he used Instrument 990170 to test Kryza on May 6, 2012. As discussed above, the evidence showed that this particular instrument had been certified on July 11, 2000; April 16, 2012; September 12 and 18, 2012. Tr. p. 107-08. In short, the evidence demonstrated that Instrument 990170 had been certified more frequently than what typical protocol required. As a result, information demonstrating that other DataMaster instruments were certified every six months was cumulative and unnecessary.

Additionally, the introduction of collateral evidence of DataMaster instruments not used in this case may very well have confused or misled the jury. As a result, we conclude that the trial court did not abuse its discretion in excluding the documents Kryza offered that pertained to the instruments that were not used in this case.

### E. Right to Confrontation

Kryza argues that his convictions must be reversed because his right to confrontation under the Sixth Amendment to the United States Constitution was violated. Kryza maintains that this right was violated when the certification of compliance for the DataMaster machine and the subsequent breath test result were entered into evidence.

Kryza claims that the individual who approved the instrument was required to be present at trial and subject to cross-examination.

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. const. amend. VI. Thus, a witness's testimony against a defendant is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36 (2004). The Crawford Court noted the following application of the confrontation clause: "It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51.

The United States Supreme Court in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), "elaborated on the meaning of 'testimonial' within the realm of forensic chemical testing." Also, in Ramirez, this Court examined the precise issue that Kryza now raises in light of Melendez-Diaz and "reaffirmed [this Court's] position that certificates verifying routine inspection of breath test instruments are nontestimonial." Id. at 219. In Bullcoming v. New Mexico, the United States Supreme Court held that the introduction of a forensic laboratory report which contained "a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the

21

certification" violated the Confrontation Clause. 131 S. Ct. 2705, 2710 (2011). Also, in Jones v. State, we recently examined Bullcoming and reaffirmed the holding in Ramirez that documents like the ones that Kryza are now challenging are not testimonial. Jones v. State, 982 N.E.2d 417, 428 (Ind. Ct Ap. 2013), trans. denied.

There is nothing in Crawford and its progeny suggesting that the confrontation clause is meant to apply to routine examinations of breath test instruments conducted pursuant to statute and not in contemplation of trial. Id. The maintenance function of certification is not an accusation of criminal wrongdoing against any person, let alone Kryza. Thus, an extension of the application of the Confrontation Clause to the certification process does nothing to satisfy the constitutional assurance that an accused be permitted to confront his or her accusers, because nothing in the certification process is an accusation.

Also, notwithstanding Kryza's baseless allegations that his case is somewhat or somehow different from Ramirez and Jones, any error is harmless in light of the other evidence that established Kryza's guilt. See Jones, 982 N.E.2d at 428 (observing that the State "did not have to prove a certain blood alcohol to sustain Jones's conviction" in light of the officer's "extensive and explicit testimony demonstrating that Jones operated the vehicle while intoxicated").

Here, similar to the circumstances in Jones, Officer Blythe noticed several signs and symptoms of intoxication when he saw Kryza, including the odor of alcohol on his breath, bloodshot eyes, and unsteady balance. As in Jones, the subject failed three

22

standardized field sobriety tests.  Tr. p. 47, 53-63.  Moreover, Kryza admitted to Officer Blythe that he had been drinking before driving, and he crashed his vehicle in a manner that was consistent with intoxicated driving.  Id. at 41-44.  As a result, we cannot say that the Confrontation Clause was implicated and violated Kryza's rights.

## CONCLUSION

In light of our discussion above, we conclude that the trial court properly prevented the medical report from being admitted into evidence, that Dr. Bederka's testimony about certain aspects of the alleged defects and shortcomings of the DataMaster was correctly excluded from the evidence, and that Officer Chapman, the breath test operator, could render an opinion regarding the accuracy of the breath test results.  Also, the trial court properly exercised its discretion in excluding certifications from other DataMaster machines that were not actually used in this case, and there was no violation of Kryza's right to confrontation under the Sixth Amendment to the United States Constitution.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.